

04/23/2010

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JOHN T. HOEFER, | § | CASE NO. 08-42075 |
| | § | |
| DEBTOR, | § | CHAPTER 7 |
| | § | |
| TRINITY HARDWOOD DISTRIBUTORS, INC., | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | ADV. NO. 09-04009 |
| v. | § | |
| | § | |
| JOHN T. HOEFER, | § | |
| | § | |
| DEFENDANT. | § | |
| | § | |
| AMEGY BANK NATIONAL ASSOCIATION, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | ADV. NO. 09-04042 |
| v. | § | |
| | § | |
| JOHN T. HOEFER, | § | |
| | § | |
| DEFENDANT. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court consolidated the above-styled adversary proceedings for purposes of trial. This matter is before the Court following trial of the adversary complaints wherein the Plaintiffs seek a denial of the Defendant's discharge as well as a judgment of nondischargeability. Pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court makes the following findings of fact and conclusions of law:

1

## I. FINDINGS OF FACT

### A. Procedural History

1. Plaintiffs herein, Amegy Bank National Association ("Amegy Bank") and Trinity Hardwood Distributors, Inc. ("Trinity"), are creditors and parties in interest in the bankruptcy case of John T. Hoefer (the "Defendant"). Amegy Bank and Trinity are referred to collectively herein as "Plaintiffs."

2. On August 4, 2008 (the "Petition Date"), Amegy Bank, 78 NEP, Ltd. and Trinity, as petitioning creditors, filed involuntary petitions for relief against Hoefer Management Company, Inc. ("HMC"), a Texas corporation, and Defendant.

3. On August 28, 2008, the Court entered unopposed orders for relief against HMC and Hoefer under chapter 7 of the Bankruptcy Code. HMC's bankruptcy case is pending under Case No. 08-42072.

4. On January 13, 2009, Trinity filed an adversary complaint against Defendant objecting to Defendant's discharge under §§ 727(a)(2)(A), (a)(3), (a)(4)(A), (a)(6) and (a)(7). Trinity's complaint is pending under Adv. No. 09-4009.

5. On March 17, 2009, Amegy Bank filed an adversary complaint against Defendant seeking a judgment (i) determining that Amegy Bank's claim stemming from a July 2007 loan to HMC in the original principal amount of $200,000 should be excepted from discharge under § 523(a)(2)(B), and (ii) denying Defendant his discharge under §§ 727(a)(2)(A), (a)(3), (a)(4)(A), (a)(6) and (a)(7). Amegy Bank's complaint is pending under Adv. No. 09-4042.

2

**B. Discovery Disputes**

6. On December 31, 2008, the Court entered an Agreed Order granting Amegy Bank's Motion for Rule 2004 Examination Duces Tecum of John T. Hoefer (the "Rule 2004 Order"). In response to the Rule 2004 Order, Defendant produced a total of 27 pages of documents on January 5, 2009. No bank account documents for Defendant were produced, and only two account statements totaling two pages for HMC were produced.

7. Amegy Bank filed its Motion to Compel Production of Documents on September 2, 2009 (the "Motion to Compel"). The Court scheduled a hearing to consider the Motion to Compel on October 27, 2009 at 2:00 p.m.

8. Prior to the October 27th hearing, the parties entered into an Agreed Order granting the Motion to Compel, which the Court entered on October 22, 2009 (the "Agreed Compel Order").

9. In light of the cost of obtaining copies of checks and other bank account records, Defendant agreed to permit Amegy Bank to have access to all bank records provided that Amegy Bank would pay for the cost of production.

10. Amegy Bank filed its Motion to Strike Defendant's Answer and/or for other discovery sanctions pursuant to Federal Rule of Civil Procedure 37(b) on December 29, 2009 (the "Motion for Discovery Sanctions"). On January 5, 2010, Defendant filed his Response to the Motion for Discovery Sanctions. Also on or about January 5, 2010, Defendant delivered to Amegy Bank an 89-page account ledger for HMC for the period between January 1, 2006 and June 7, 2007 (the "HMC Ledger").

11. The HMC Ledger does not include transfers or payments made for the period

3

of time after June 7, 2007, including for the period after Amegy Bank's July 6, 2007 $200,000 loan to HMC was funded.

12. The Court held a hearing to consider Amegy Bank's Motion for Discovery Sanctions on January 25, 2010 in Adv. No. 09-4042. Immediately prior to the hearing, Defendant produced to Amegy Bank certain American National Bank account statements and Viewpoint Bank account statements for HMC.

13. On January 28, 2010, Amegy Bank filed a Certificate of Documents Produced By Defendant in Adv. No. 09-4042, which included the documents produced by Defendant during the January 25, 2010 hearing.

14. On February 5, 2010, the Court entered its Order Granting [in part] Amegy Bank's Motion for Discovery Sanctions.

### C. Factual Background

15. Defendant is a sophisticated business man.

16. On January 9, 2007, HMC entered into a contract with Hubert White to purchase the assets of White's Carpets, Inc. These assets included a facility located at 203 E. US Highway 80, Forney, Texas 75126, i (the "Forney Facility"). The assets of White's Carpets, Inc. also included inventory, equipment and accounts receivable, as set forth in the purchase agreement titled Amended Contract for the Sale of Property and all Assets of Corporate Business ("Purchase Agreement"). The value of the accounts receivable was stated in the Purchase Agreement to be $277,950.25.

17. Defendant's long-time friend, Dennis McCoy, loaned HMC the $88,000 down payment required by the Purchase Agreement. Defendant and McCoy have known each other since 1958. McCoy was the president of FOCI Corp. ("FOCI"), and he also was the

4

manager and sole member of BDT Services, LLC ("BDT").

18. On February 1, 2007, HMC and FOCI entered into a Note, Security Agreement, and Deed of Trust relating to the Forney Facility. There is no evidence that the Deed of Trust was ever recorded.

19. On February 9, 2007, HMC executed a Promissory Note in the principal amount of $792,000 in favor of Hubert C. White and Mary M. White. HMC's obligations to the Whites under the Promissory Note were secured by a Deed of Trust relating to the Forney Facility. The Whites filed the Deed of Trust in the real property records on February 13, 2007.

20. In February 2007, HMC began to conduct business under the name White's Floor Company. HMC operated out of the Forney Facility. In addition, HMC leased two locations in Rockwall and Garland.

21. HMC d/b/a White's Floor Company sold and sometimes installed flooring materials pursuant to contracts with homeowners and home builders.

22. It was customary for HMC to order the flooring product after a customer placed an order. Typically, homeowners would pay some or all of the money for the flooring materials at the time of the order.

23. HMC kept track of which home builder was paying for the particular materials as set forth in HMC's invoice submitted to the builder. HMC then would apply the payments from the builder to the specific materials invoiced.

24. Sometime in June 2007, Defendant requested a $200,000 loan from Amegy Bank for use by HMC.

25. In connection with the loan to HMC, Defendant provided to Amegy Bank a

Small Business Credit Application ("Credit Application") and personal Financial Statement dated June 28, 2007 (the "Financial Statement").

26. In addition to the Credit Application and Financial Statement, Defendant submitted Profit and Loss and Balance Sheet Statements for HMC through April 2007.

27. The Amegy Bank Credit Application and personal Financial Statement represents that, as of June 2007, Defendant and his wife owned assets totaling $1,334,185 and carried total liabilities of $468,100, for a net worth of $866,085. Defendant's bankruptcy schedules filed October 28, 2008, disclose that Defendant owned assets totaling $774,049.59 and carried total liabilities of $1,794,822.28 as of the Petition Date.

28. HMC's Balance Sheet as of April 30, 2007, discloses that HMC owned total assets of $1,683,341.36 and carried total liabilities of $1,548,832.90. HMC's bankruptcy schedules filed on October 28, 2008, disclose that HMC owned assets totaling $30,000 and carried total liabilities of $1,016,112.50 as of the Petition Date.

29. Through HMC's Profit and Loss and Balance Sheet Statements, Defendant represented to Amegy Bank that, at all material times, HMC was profitable and owned assets far in excess of HMC's liabilities. Defendant testified at trial, however, that HMC d/b/a White's Floor Company was never profitable.

30. Amegy Bank reasonably relied upon the information contained in the Credit Application, Financial Statement and HMC's Profit and Loss and Balance Sheet Statements, and loaned HMC $200,000.

31. On July 6, 2007, HMC, as borrower, executed a promissory note in favor of Amegy Bank in the original principal amount of $200,000.00 (the "Promissory Note").

32. Simultaneous with HMC's execution of the Promissory Note, Defendant

6

executed a Commercial Guaranty, and personally guaranteed the full and punctual payment and satisfaction of all obligations due and owing under the Promissory Note (the "Guaranty").

33. HMC ceased operating in late August 2007 or early September 2007. HMC voluntarily transferred its interest in the Forney Facility to BDT on September 28, 2007, by executing a Special Warranty Deed. Dennis McCoy, who was the principle of BDT, hoped to pay off the debt owed to the Whites and recoup his investment in HMC through a sale of the Forney Facility.

34. HMC was never evicted from or locked out of the Forney Facility. Defendant never received any notice of foreclosure from anyone regarding the Forney Facility.

35. Defendant kept invoices and documents evidencing accounts receivable in a file cabinet at the Forney Facility. Defendant also kept accounts receivable and accounts payable records on a computer located at the Forney Facility. Defendant failed to remove any of HMC's business records when he vacated the Forney Facility. Defendant failed to take any steps to preserve his own or HMC's business records or HMC corporate records after vacating the Forney Facility.

36. Defendant purchased a 2008 Lexus 350 in or around October 2007. In addition, on October 9, 2007, HMC paid $5,633.95 to Carmax from HMC's bank account. From and after June 2007, HMC withdrew large sums of money on several occasions – including, in October 2007, withdrawals of $35,000, $12,000, $10,000, $7,000, $4,000 and $1,000, totaling $69,000. Defendant offered no evidence, credible or otherwise, of what happened to that money.

37. After HMC vacated the Forney Facility, Defendant's daughter, Lindsay Martin,

and his son-in-law, Chad Martin, conducted a flooring business at the Forney Facility under the name "C&L Flooring."

38. Due to HMC's defaults under the Promissory Note, on February 20, 2008, Amegy Bank filed its Original Petition against HMC and Defendant seeking a judgment for amounts due and owing under the Promissory Note and Guaranty in the 44th District Court of Dallas County, Texas, Case No. 08-01891 (the "State Court").

39. On June 27, 2008, the State Court granted Amegy Bank summary judgment against HMC and Defendant, jointly and severally, in the amount of $208,065.17, plus attorney fees, interest and court costs (the "Amegy Judgment"). The Amegy Judgment is final and remains wholly unsatisfied.

**D. HMC's Books and Records**

40. HMC maintained books and records of its business transactions, but has failed to produce any ledgers or offer evidence of its financial dealings after June 7, 2007.

41. Defendant testified that he left his business records at the Forney Facility because he expected his friend, Dennis McCoy, to notify him when he needed to remove the documents. Defendant testified, inconsistently, that he did not know the Forney Facility was being transferred to his friend's company – he thought the Forney Facility was being transferred back to the Whites. Defendant testified at trial that the Whites were his most aggressive creditors.

42. Defendant's abandonment of HMC's records made it impossible for Trinity to trace their materials to a particular project and assert a lien. The abandonment of the books and records also made it impossible for HMC's bankruptcy trustee to collect any outstanding accounts receivable.

43. HMC maintained and regularly accessed a business savings and business checking account at Viewpoint Bank throughout all of 2007, Account No. 1053023001 and 105302300, respectively (the "HMC Viewpoint Bank 2300 Accounts"). Defendant has produced no documents which contain payee information for transfers made or checks issued from the HMC Viewpoint Bank 2300 Accounts.

44. In addition to the HMC Viewpoint Bank 2300 Accounts, HMC maintained two other accounts at Viewpoint Bank in 2007 under the assumed name Mastertech. Defendant failed to produce any documents or bank records for the HMC d/b/a Mastertech accounts.

45. According to HMC's 2007 Balance Sheet Statements, HMC maintained a CCU Savings bank account in 2007. Defendant failed to produce any documents or bank records for CCU Savings account.

46. According to the HMC's bankruptcy schedules, HMC maintained 2 additional bank accounts at Viewpoint Bank, Account Nos. 400807378 and 400807381. Defendant failed to produce any documents or bank records for the Viewpoint Bank Account Nos. 400807378 and 400807381.

47. HMC used a payroll service, ADP. Defendant failed to produce payroll records in Trinity's Adv. No. 09-4009.

**E. Defendant's Involuntary Bankruptcy**

48. HMC did not disclose the September 28, 2007, transfer of the Forney Facility to BDT in its original Statement of Financial Affairs. After the meeting of creditors held pursuant to § 341 of the Code, HMC amended its Statement of Financial Affairs to disclose the transfer.

49. Defendant did not disclose the payment to Car Max in his Statement of Financial Affairs. Defendant did not present evidence of what car was purchased and testified that he did not know. The asset is missing, and the Court is unable to determine what happened to it or whether the payment to Car Max was for some other purpose.

50. During the Defendant's and HMC's Section 341 Meeting of Creditors, and during Defendant's Rule 2004 examination on January 9, 2009, Defendant testified that the Forney Facility was surrendered to the secured lender, Hubert White, because of payment defaults by HMC. This testimony was false, because at the time he executed the Special Warranty Deed, HMC was not in default of its obligations to White.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

51. A proceeding to determine the dischargeability of a particular debt or involving objections to a debtor's discharge raises a core matter over which this Court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(I) and (J) and 1334.

### B. Burden of Proof

52. Section 727 of the Code provides that the Court must grant a discharge to a Chapter 7 debtor unless one or more of the specific grounds for denial of a discharge listed in paragraphs (1) through (12) of § 727(a) is proven to exist. The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. *See Friendly Finance Discount Corp. v. Jones (In re Jones)*, 490 F.2d 452 (5th Cir. 1974). Further, under FED.R.BANKR.P. 4005, the burden of proof is on the party objecting to the debtor's discharge.

10

53. In an action to determine the dischargeability of a debt under § 523 of the Code, the creditor has the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). Thus, without satisfactory proof of each element of the cause of action, judgment must be entered for the debtor.

### C. Plaintiffs' Objections to Discharge (11 U.S.C. § 727)

54. As an initial matter, § 727(a)(7) extends the basis for denial of discharge to a debtor's misconduct in a substantially contemporaneous related bankruptcy case. Section 727(a)(7) provides that "the Court shall grant a debtor a discharge, unless -- . . . the debtor has committed any act specified in paragraph (2), (3), (4), (5) or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider."

55. If the debtor is an individual, the term "insider" includes any corporation of which the debtor is a director, officer, or person in control. 11 U.S.C. § 101(31)(A)(iv). Thus, if a debtor engages in objectionable conduct in a case involving a corporation of which the debtor is an officer, director or controlling person, the debtor may be denied a discharge in the debtor's own case. *See, e.g. First City Bank – Central Park v. Powell (In re Powell)*, 88 B.R. 114 (Bankr. W.D. Tex. 1988) (company engaged in jewelry business was "insider" of Chapter 7 debtor-husband, who was 90% owner of company and

11

company's officer, operator, and prime employee, and thus the failure of company to account for deterioration of its inventory or preserve its records warranted denial of debtor's discharge); *Tucker v. Devine* (*In re Devine)*, 11 B.R. 487 (Bankr. D. Mass. 1981) (debtor who was an insider of a corporation that had also filed a petition was denied a discharge when the debtor failed to produce books and records for the corporation).

56. HMC is an "insider" of Defendant as that term is defined in §101(31)(A)(iv) of the Code.

### 1.  Section 727(a)(2)(A)

57. Section 727(a)(2)(A) provides in pertinent part:

(a) The court shall grant the debtor a discharge, unless–
 (2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
  (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A).

58. In this case, Plaintiffs allege that Defendant intended to hinder, delay, or defraud HMC's creditor(s) in transferring the Forney Facility to BDT.

59. Although Defendant did not disclose the transfer of the Forney Facility in his original schedules and statements, he did disclose the transfer at the meeting of creditors, and he promptly amended HMC's Statement of Financial Affairs to reflect the transfer.

60. Taking into account the Whites' lien and FOCI's lien, Defendant had no equity in the Forney Facility. Moreover, the default by HMC on its obligation to the Whites permitted the Whites to foreclose. The transfer of the Forney Facility to BDT did not harm creditors of HMC and the Defendant.

61. The Court concludes that Defendant did not have the intent required by § 727(a)(2)(A). The Court further concludes that Plaintiffs have failed to establish grounds for denial of Defendant's discharge under § §727(a)(2)(A) and (a)(7) of the Code.

### 2. Section 727(a)(3)

62. Section 727(a)(3) provides:

The court shall grant the debtor a discharge, unless ... the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

63. Section 727(a)(3) is distinct from other subsections of § 727, including §§ 727(a)(2) and 727(a)(4), both of which specifically require a showing of intent or that the act was knowing and fraudulent. The unambiguous language of § 727(a)(3) requires no showing of knowing or fraudulent intent regarding the destruction of books and records.

64. Plaintiffs bear the initial burden to prove that Defendant failed to keep and preserve financial records and that this failure prevented Plaintiffs from ascertaining the the financial condition of Defendant and HMC. *See Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003). If this initial burden is satisfied, the burden shifts to the Defendant to prove that the inadequacy is justified under the circumstances. *See id.*

65. Here, Plaintiffs have sustained their burden under § 727(a)(3) of showing the absence of records regarding Defendant's operation of HMC d/b/a White's Floor Company from and after June 7, 2007. Thus, the question for the Court to decide is whether Defendant has a sufficient justification for not maintaining financial records.

66. The Court's inquiry includes several relevant factors such as "the education,

experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to the debtor or his business; and any other circumstances that should be considered in the interest of justice." *Meridian Bank v. Alten,* 958 F.2d 1226, 1230-31 (3rd Cir. 1992) (quoting *Milam v. Wilson (In re Wilson),* 33 B.R. 689, 692 (Bankr. M.D. Ga. 1983)). "[A]ny explanation given by the debtor to explain any deficiency in his records must be evaluated both for its credibility and reasonableness under the circumstances of this debtor's affairs and degree of sophistication and for the materiality of any insufficiency." *Grange Mut. Ins. Co. v. Benningfield (In re Benningfield),* 109 B.R. 291, 293 (Bankr. S.D. Ohio 1989).

67. Defendant is a sophisticated businessman, and there is no dispute that he kept detailed records of his business activities. Defendant, however, failed to preserve those records. He abandoned substantially all of HMC's business records, including ledgers, bank account statements and copies of checks issued in 2007, when he closed his business.

68. Defendant's testimony that he believed that his friend, Dennis McCoy, would safeguard the records was inconsistent with his testimony that he believed HMC had transferred the Forney Facility back to the Whites. Defendant testified that the Whites were his most aggressive creditors. Having observed Defendant's testimony and his demeanor, the Court concludes that Defendant made a deliberate choice to abandon HMC's business records and had no concern for what might happen to those records.

69. Defendant's abandonment of HMC's books and records prevented Plaintiffs and this Court from ascertaining HMC's financial condition after June 7, 2007. Among other things, the lack of books and records made it impossible for the Court to determine

14

what happened to the proceeds of the $200,000 loan funded by Amegy Bank and the tens of thousands of dollars withdrawn from HMC's bank accounts during 2007. In addition, Defendant's failure to preserve HMC's or his own business records made it impossible for Trinity or for any creditor or customer of HMC to determine how Defendant applied funds he controlled.

70. Defendant's failure to keep and preserve records of HMC's business was not justified under the facts of this case. The Court, therefore, concludes that Plaintiffs have established grounds to deny Defendant's discharge pursuant to §§ 727(a)(3) and (a)(7).

### 3. Section 727(a)(4)(A)

71. Section 727(a) provides that the court shall grant a debtor a discharge, unless: (4) the debtor knowingly and fraudulently, in or in connection with the case--(A) made a false oath or account ...." 11 U.S.C. § 727(a)(4).

72. To deny Defendant's discharge under §727(a)(4)(A), Plaintiffs must prove, by a preponderance of the evidence, that: (i) Defendant made a statement under oath; (ii) the statement was false; (iii) Defendant knew the statement was false; (iv) Defendant made the statement with fraudulent intent; and (v) the statement related materially to the bankruptcy case. *See Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 177-78 (5th Cir. 1992).

73. Here, Plaintiffs allege that Defendant falsely testified that HMC transferred the Forney Facility to the Whites as the mortgage holders. There is no dispute that HMC actually transferred the Forney Facility to BDT. However, BDT was owned by Defendant's friend, McCoy, who also owned FOCI Corp. FOCI Corp. had a secured interest in the Forney Facility. Defendant disclosed the transfer of the Forney Facility at the meeting of

15

creditors. The Court finds and concludes that, when Defendant's testimony is considered as a whole, Defendant did not make a false statement under oath. The Court further finds and concludes that any misstatements by Defendant with respect to the transfer of the Forney Property were not made with the intent required by § 727(a)(4)(A)

74. For the foregoing reasons, the Court concludes that Plaintiffs have failed to establish grounds to deny Defendant's discharge under §§ 727(a)(4)(A) and (a)(7) of the Code.

### 4. Section 727(a)(5)

75. Section 727(a)(5) of the Code states that a debtor will be denied a discharge when "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). The initial burden of going forward with evidence is on the objector, who must introduce more than merely an allegation that the debtor has failed to explain losses. Once the objector has introduced some evidence of the disappearance of substantial assets or of unusual transactions, the debtor must satisfactorily explain what happened. *See First Texas Sav. Assoc., Inc. v. Reed (In re Reed)*, 700 F.2d 986, 992-993 (5th Cir. 1983).

76. Defendant has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the Defendant's liabilities and/or HMC's liabilities. In particular, Defendant failed to explain what happened to the $200,000 HMC received from Amegy Bank or the tens of thousands of dollars withdrawn from HMC's bank accounts during 2007.

77. The Court, therefore, concludes that Plaintiffs have established grounds for denial of Defendant's discharge debts under 11 U.S.C. § 727(a)(5) and (a)(7).

### 5. Section 727(a)(6)(A)

78. Section 727(a)(6)(A) provides for the denial of the discharge when "the debtor has refused, in the case – to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. § 727(a)(6)(A).

79. Here, Plaintiffs allege that Defendant refused to obey the Court's Rule 2004 Order and Order Granting Amegy Bank's Motion to Compel.

80. Amegy Bank requested all of HMC and Defendant's banking records for 2007. Defendant eventually produced some records in response to Amegy Bank's requests. However, Defendant did not have copies of all of HMC's records, as previously discussed, and could not afford to obtain copies of the missing records from the banks. He agreed to sign any releases necessary to allow Amegy to obtain HMC's banking records. The Court finds and concludes that Defendant has substantially complied with its Orders (albeit untimely – which supports the award of attorneys' fees). The Court, therefore, concludes that Plaintiffs have failed to establish grounds for denial of Defendant's discharge under § 727(a)(6)(A).

### D. Amegy Bank's Section 523(a)(2)(B) Claim

81. Under § 523(a)(2)(B) of the Code, a discharge does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-- (B) use of a statement in writing–

    (i) that is materially false;
    (ii) respecting the debtor's or an insider's financial condition;

   (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
   (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). *See also Norris v. First Nat'l Bank in Luling (In re Norris)*, 70 F.3d 27, 29 (5th Cir. 1995).

  82. In the Fifth Circuit, "[a] statement is materially false if it 'paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit.'" *In re Norris*, 70 F.3d at 30 n.10 (quoting *Jordan v. Southeast Nat'l Bank (In re Jordan)*, 927 F.2d 221, 224 (5th Cir. 1991), overruled on other grounds, *Coston v. Bank of Malvern (In re Coston)*, 991 F.2d. 257, 259 (5th Cir. 1993)). The Credit Application, Financial Statements, Profit and Loss and Balance Sheet Statements are materially false.

  83. There is no dispute that the written Credit Application, Financial Statements, Profit and Loss and Balance Sheet Statements respect Defendant's or an insider's financial condition and that Amegy Bank reasonably relied on the written statements.

  84. The Court may consider the totality of the circumstances in inferring whether the debtor submitted a financial statement with intent to deceive. *First Nat'l Bank of Byers, N.A. v. Slonaker (In re Slonaker)*, 269 B.R. 595 (Bankr. N.D. Tex. 2001). "Reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation may combine to produce the inference of intent [to deceive]." *In re Luling,* 70 F.3d at 30 n. 12. "The debtor's intent cannot be divined in a vacuum, but must be viewed in light of the circumstances. *Texas Am. Bank v. Barron (In re Barron)*, 126 B.R. 255, 260 (Bankr. E.D Tex. 1991).

  85. Defendant intended to deceive Amegy Bank by submitting the false Credit

Application, Financial Statements, Profit and Loss and Balance Sheet Statements.

86. The Court, therefore, concludes that the Amegy Judgment is excepted from discharge under 11 U.S.C. § 523(a)(2)(B).

87. The Court further concludes that $5,000 is an appropriate sanction against Defendant for failing to timely comply with this Court's previous discovery orders.

88. To the extent any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. Likewise, to the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

### III. CONCLUSION

In summary, Plaintiffs have established grounds for denial of Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(3), (a)(5), and (a)(7). Amegy Bank has established the nondischargeability of the Amegy Judgment pursuant to 11 U.S.C. § 523(a)(2)(B). The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.

Signed on 4/23/2010

*Brenda T. Rhoades* SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE